# In the United States Court of Federal Claims

BID PROTEST
No. 15-1405C
Filed Under Seal:  December 7, 2015
Reissued for Publication:  January 7, 2016[*]

|  |  |  |
|---|---|---|
| AMIDON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Tucker Act, 28 U.S.C. § 1491(b)(1); |
| v. | ) | Post-Award Bid Protest; Motion for |
| | ) | Preliminary Injunction, RCFC 65. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*John Bradley Reaves*, Counsel of Record, ReavesColey, PLLC, Chesapeake, VA, for plaintiff.

*John Sinclair Groat*, Trial Attorney, *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., *Lieutenant Colonel Mark Allen*, Of Counsel, *Major George M. Ebert*, Of Counsel, United States Air Force, Air Force Commercial Litigation FSC, *Mark Henderson*, Of Counsel, United States Army Special Operations Command, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Amidon, Inc. ("Amidon"), brought this post-award bid protest challenging the

United States Department of Defense, United States Army Special Operations Command's

---

[*] This Memorandum Opinion and Order was originally filed under seal on December 7, 2015 (docket entry 21), pursuant to the protective order entered in this action on November 23, 2015 (docket entry 17).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the protective order.  The parties filed a joint status report on January 6, 2016 (docket entry 23) proposing certain redactions which the Court has adopted.  Accordingly, the Court is reissuing its Opinion and Order dated December 7, 2015, with the agreed redactions indicated by three consecutive asterisks within brackets ([***]).

("Army") decision to award a contract to provide medical training services to Advanced Computer Learning Company, LLC ("ACLC").  Amidon is the incumbent contractor under a prior contract to provide these services.  Amidon has filed a motion for a preliminary injunction requesting that the Court enjoin ACLC's performance under the contract and direct the government to extend the time period for Amidon to continue performance under the existing contract until the Court resolves this matter.  For the reasons set forth below, the Court **DENIES** Amidon's motion for a preliminary injunction.

## II.     PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.  Factual Background

Plaintiff, Amidon, is the incumbent contractor under a government contract to provide medical training services at the Joint Special Operations Medical Training Center located in Fort Bragg, North Carolina.  Comp. at 1.  Amidon and Advanced Computer Learning Company submitted the top two proposals to the Army to provide these services under a subsequent contract.  *Id*.  On July 23, 2015, the Army awarded that contract to ACLC.  Def. App. at 81.  Amidon subsequently protested the Army's award decision before the Government Accountability Office ("GAO") and thereafter, the Army extended the period for Amidon to perform under its predecessor contract until November 30, 2015.  *Id.* at 3.

In its motion for a preliminary injunction, Amidon seeks a preliminary injunction "directing that Defendant United States of America acting through the Department of Defense be required to permit Amidon to continue its performance [under its predecessor contract] until the merits of this dispute can be considered."  Pl. Mot. at 1.  In addition, Amidon seeks to enjoin ACLC's performance under the contract.  Def. Resp. at 2-3.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from plaintiff's complaint (Comp. at __"); plaintiff's motion for a preliminary injunction ("Pl. Mot. at __"); plaintiff's memorandum in support of its motion for a preliminary injunction ("Pl. Mem. at __"); defendant's response and opposition to plaintiff's motion for a preliminary injunction ("Def. Resp. at __"); defendant's appendix to its response ("Def App. at __"); and plaintiff's reply in support of its motion for a preliminary injunction ("Pl. Reply at __").  Except where otherwise noted, the facts cited herein are undisputed.

### 1.      The Request For Proposals

The Joint Special Operations Medical Training Center contracts for training support and medical instructors for certain courses conducted at its United States Army John F. Kennedy Special Warfare Center and School, United States Army Special Operations Command, located in Fort Bragg, North Carolina.  Def. App. at 88.  On May 7, 2015, the Army issued a Request for Proposals ("RFP") for a contract to provide these medical training services.  *Id*. at 87-185.  The RFP called for a contract with an initial one-year period of performance and two one-year option periods.  *Id*. at 79.

The RFP provided that the government would conduct the solicitation as an 8(a) competitive, best value, source selection in accordance with Federal Acquisition Regulation Part 15 and Subpart 19.8.  *Id*. at 79.  The RFP also identified four factors that the Army would evaluate in determining award:  (1) qualifying criteria; (2) management/technical plan; (3) past and present performance; and (4) price.  *Id*. at 181.  The management/technical plan and past and present performance factors contained in the RFP were specified as being significantly more important than price.  *Id*.  In addition, the management/technical plan factor consisted of three subfactors, which were to be considered in descending order of importance:  (1) management plan; (2) technical approach; and (3) documented corporate experience.  *Id*. at 79, 181-83.

Of particular relevance to this dispute, the RFP also specified that offerors shall provide a proposal with a technical approach that addresses live tissue laboratory training.  *Id*. at 173.  The RFP further instructed that offerors were to demonstrate the "relevancy of corporate experience and core competency in conducting the required training."  *Id*.

Amidon, ACLC, and six other offerors submitted proposals pursuant to the RFP.  *Id*. at 80.  The Source Selection Evaluation Board completed the initial evaluation of the proposals on June 11, 2015.  *Id*. at 236-37.  Subsequently, on July 13, 2015, the contracting officer sent all offerors, including Amidon and ACLC, a request for a Best and Final Offer.  *Id*. at 237-40.  On July 17, 2015, the Source Selection Evaluation Board completed its evaluation of the revised proposals and made a technical recommendation to award the contract to ACLC.  *Id*. at 250-51.

During the evaluation of the proposals, the Army assigned Amidon a final technical rating of "Good."  *Id*. at 51 (Source Selection Decision Document).  The Army assigned ACLC a final technical rating of "Outstanding."  *Id*. at 51, 261.  In addition, ACLC's proposed price was [***] less than Amidon's proposed price.  *Id*. at 264.

3

The Army's Source Selection Decision Document describes the agency's best value determination for the contract as follows:

> 4. SOURCE SELECTION DECISION. When combining technical and confidence ratings outstanding is defined as having an exceptional approach and understanding of the requirements and strengths far outweigh any weaknesses. As defined Amidon was determined outstanding. Amidon and ACLC after providing their BAFO and responses to clarifications and discussions were determined equally technically acceptable with the lowest prices. I have independently reviewed the various elements of the proposal and the discussion results and have determined that an award to ACLC with an overall price [\*\*\*] less than Amidon represents the lowest priced of the most highly rated technical offerors considering the criteria set forth in the solicitation. An award to ACLC offers the best value to the Government.

*Id.* at 54, 264. The Army awarded the contract to ACLC on July 23, 2015. *Id.* at 81.

### 2.    The GAO Bid Protest

On July 28, 2015, Amidon protested the Army's decision to award the contract to ACLC before the Government Accountability Office. *Id*. at 82, 339. In that protest, Amidon alleged that the Army failed to follow the RFP by: (1) ignoring ACLC's lack of documented corporate experience and ignoring the risk of unsuccessful performance; (2) improperly evaluating ACLC's past performance, especially its lack of live tissue laboratory training; (3) not conducting a price analysis to determine whether ACLC's price was unrealistically low; and (4) conducting a flawed best value tradeoff analysis. *Id.* at 69, 342. The GAO denied Amidon's protest on October 30, 2015. *Id*. at 339-44. In its denial decision, the GAO held that Amidon's arguments "do not provide a basis to question the award to ACLC." *Id.* at 342. The GAO also found that the evaluation of proposals, including the relevant merits of the proposals, is a matter within the discretion of the contracting agency, and that the record before the GAO showed that the Army properly considered ACLC's corporate experience along with the live tissue training experience of ACLC's major subcontractor, Tactical Element, Inc., who had recently provided live tissue training at the Joint Special Operations Medical Training Center. *Id*. at 343. Finally, the GAO determined that Amidon's argument that Amidon deserved a higher performance confidence rating was without a factual basis in light of the evidence before the GAO. *Id*.

During the GAO bid protest, Amidon continued to perform under several extensions of its predecessor contract. *Id*. at 55. The final extension of Amidon's contract expired on November 30,

2015.  *Id.* at 55-56, 58.  ACLC commenced performance under the contract on December 1, 2015. *Id.* at 4; Pl. Reply 12-13.

### B.  Procedural Background

Amidon filed its complaint in this matter on November 19, 2015.  *See generally* Comp.  On that same day, Amidon filed a motion for a preliminary injunction requesting that the Court direct the government to permit Amidon to continue to perform under its predecessor contract until the merits of this case have been decided.  *See generally* Pl. Mot.  On November 23, 2015, the parties participated in a telephonic status conference in which Amidon represented that it also sought to enjoin ACLC from commencing performance under the contract.  On November 24, 2015, the government filed its response and opposition to Amidon's motion for a preliminary injunction.  *See generally* Def. Resp.  The government attached to its response a number of documents, including ACLC's Management Technical Plan, the Army's technical evaluation summary statement, and the GAO's bid protest decision.  *See generally* Def. App.  On November 25, 2015, Amidon filed a reply in support of its motion for a preliminary injunction.  *See generally* Pl. Reply.

On November 30, 2015, the Court held a status conference with the parties to discuss Amidon's motion.  During that status conference, the Court issued an oral decision denying Amidon's motion for a preliminary injunction.  The Court's rationale for denying Amidon's motion is set forth below.

## III.   JURISDICTION AND LEGAL STANDARDS

### A.  Jurisdiction And Bid Protests

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  In bid protest cases, this Court reviews agency actions under the "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the Administrative Procedure Act standard, an award may be set aside if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa*

*Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  The
United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting
> agency provided a coherent and reasonable explanation of its exercise of discretion,
> and the disappointed bidder bears a "heavy burden" of showing that the award decision
> had no rational basis.  When a challenge is brought on the second ground, the
> disappointed bidder must show a clear and prejudicial violation of applicable statutes
> or regulations.

*Id.*

In reviewing an agency's procurement decision, the Court should recognize that the
agency's decision is entitled to a "presumption of regularity."  *Citizens to Pres. Overton Park, Inc.
v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99
(1977) (citations omitted).  The Court should not substitute its judgment for that of the agency.
*Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show,
by a preponderance of the evidence, that the agency's actions were either without a reasonable basis
or in violation of applicable procurement law."  *Info. Tech. & Applications Corp. v. United States*,
51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003); *see Gentex Corp. v. United
States*, 58 Fed. Cl. 634, 648 (2003).

This standard "is highly deferential."  *Advanced Data Concepts, Inc. v. United States*, 216
F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419
U.S. 281, 285 (1974)).  As long as there is "a reasonable basis for the agency's action, the court
should stay its hand even though it might, as an original proposition, have reached a different
conclusion . . . ."  *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).  But, if "the
agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for
its decision that runs counter to the evidence before the agency," then the resulting action lacks a
rational basis and, therefore, is defined as "arbitrary and capricious."  *Ala. Aircraft Indus., Inc.–
Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs.
Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

### B.  Preliminary Injunctions, RCFC 65

The Tucker Act authorizes this Court to "award any relief that the court considers proper,
including . . . injunctive relief."  28 U.S.C. § 1491(b)(2); *see* Rule 65 of the Rules of the United
States Court of Federal Claims ("RCFC").  However, "a preliminary injunction is an extraordinary

6

and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd*., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (The award of a preliminary injunction is a "'drastic and extraordinary remedy that is not to be routinely granted.'" ).

In deciding whether to grant preliminary injunctive relief, the United States Court of Appeals for the Federal Circuit has directed that the Court consider:  (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).  "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).  In addition, "[n]o one factor, taken individually, is necessarily dispositive," and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427.  But, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors, to justify the denial" of a motion for a preliminary injunction.  *Id*.

## IV.    ANALYSIS

In its motion for a preliminary injunction, and in subsequent representations to the Court, Amidon requests that the Court enjoin ACLC's performance under the contract and direct the Army to extend Amidon's existing contract until the resolution of this matter.  In this regard, Amidon argues that the Army's decision to award the contract to ACLC lacked a rational basis, and that Amidon will be irreparably harmed if ACLC is permitted to commence performance.  *See generally* Pl. Mem.  The government opposes Amidon's motion and argues that Amidon has not met its burden to show that it is entitled to a preliminary injunction.  *See generally* Def. Resp.  In this regard, the government argues that the Army acted reasonably in awarding the contract to ACLC and that the factors that the Court must consider in weighing a motion for a preliminary injunction weigh against granting Amidon's motion.  *See generally* Def. Resp.  For the reasons discussed

7

below, the undisputed facts in this matter show that Amidon has not established that it is entitled to preliminary injunctive relief.  And so, the Court must deny Amidon's motion.  RCFC 65.

### A. Amidon Is Unlikely To Succeed On The Merits

There can be no dispute that, as the incumbent contractor, Amidon will be significantly harmed by the loss of its contract to provide medical training services to the Army.  *See generally* Pl. Mem.  But, even if the Court were to accept that such harm is "irreparable," the other factors that the Court must weigh in considering Amidon's motion for a preliminary injunction weigh against granting Amidon's motion.  *PGBA*, 389 F.3d at 1228-29.

As discussed above, when deciding whether to grant a motion for preliminary injunctive relief, this Court must consider four factors:  (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.  *Id*.; *FMC Corp.*, 3 F.3d at 427.  "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG*, 566 F.3d at 1005.

Amidon has not shown that it is likely to succeed on the merits of this case.  To establish that it is likely to succeed on the merits of its bid protest, Amidon must show, by a preponderance of the evidence, that the Army's actions in awarding the contract to ACLC "were either without a reasonable basis or in violation of applicable procurement law or procedure."  *Info. Tech. & Applications Corp.*, 51 Fed. Cl. at 346.  This is a "heavy burden."  *Impresa*, 238 F.3d at 1333, 1338.

The undisputed facts in this case show that Amidon cannot satisfy its burden here.  First, the record before the Court contradicts Amidon argument that the ACLC's proposal did not address the RFP's requirement that offerors have experience with "live tissue training."  Pl. Mem. at 3; Def. App. at386.  In this regard, the RFP provides that the offerors shall address in their proposal "live tissue laboratory training" and shall demonstrate the relevancy of corporate experience in conducting such training.  Def. App. at 173.  A plain reading of ACLC's Management Technical Plan, which was submitted as part of ACLC's proposal, shows that ACLC provided a detailed overview of the live tissue laboratory training that ACLC intends to provide under the contract. Def. App. at 386 (ACLC's Management Technical Plan).  In addition, the Management Technical

Plan also states that at least one of ACLC's employees has experience in conducting live tissue training. *Id*. at 444. The Management Technical Plan further provides that ACLC's proposed subcontractor, Tactical Element, Inc., also "specializes in providing tactical combat casualty care (TCCC) operations and training" and possesses an expertise in other areas of medical care training. *Id*. at 353. Amidon does not dispute any of these facts. Pl. Mem. at 3; Pl. Reply at 3. Given that, the undisputed evidence before the Court shows that ACLC did address live tissue training in its proposal. And so, Amidon has not shown that there is a substantial likelihood that it would succeed upon the merits of its claim.

The evidence currently before the Court also calls into question Amidon's allegation that the Army failed to follow the RFP's required methodology for reaching a best value determination. Pl. Mem. at 3-5. In this regard, Amidon argues that its proposal and ACLC's proposal received equivalent final technical ratings, and that the Army awarded the contract to ACLC because ACLC offered the lowest price. *Id*. Amidon further argues that, by doing so, the Army conducted a flawed best value analysis. *Id*.

Amidon's argument is contradicted by the record. The Source Selection Decision Document for this procurement states that the Army assigned Amidon a final technical rating of "Good." Def. App. at 51 (Source Selection Decision Document). By comparison, this same document also states that the Army assigned ACLC a final technical rating of "Outstanding." *Id*. And so, the Army's Source Selection Decision Document makes clear that the Army did not equally rate the proposals submitted by Amidon and ACLC. *Id*. Amidon also does not dispute this fact. Pl. Reply at 6-7. And so, a key element of Amidon's claim in this matter–that the government improperly relied upon price as the sole deciding factor in making its award decision–is simply not supported by the record evidence.[2]

In sum, Amidon has not met its burden to show a "reasonable probability" of succeeding on the merits of this case with respect to both of its challenges to the Army's award decision. *Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 457 (2003). Rather, the undisputed material facts in this case show that ACLC's proposal addressed live tissue training and that the Army did not base its decision to award the contract to ACLC solely upon ACLC's lower-priced proposal. In light of

---

[2] The Court acknowledges that the record before the Court at this preliminary stage in the litigation does not constitute the full administrative record.

these undisputed facts, the Court must deny Amidon's motion for a preliminary injunction. *Altana Pharma AG*, 566 F.3d at 1005 ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors [likelihood of success on the merits and irreparable harm] to be entitled to a preliminary injunction.").

## B.  Other Factors Weigh Against Granting Injunctive Relief

In addition, the remaining factors that the Court considers when weighing whether to grant a motion for a preliminary injunction also weigh against granting Amidon's motion.  First, any harm that Amidon would suffer as a result of the loss of its contract is outweighed by the harm to the government if the Court were to enjoin ACLC's performance. *See PGBA*, 389 F.3d at 1229 (in considering a motion for a preliminary injunction, the Court balances the harm the movant would suffer without preliminary relief, against the harm that preliminary relief would inflict on the non-movant); *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 320 (2009) ("Generally, if the balance tips in favor of defendant, a preliminary injunction is not appropriate."); *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715–16 (2006).  According to the government, ACLC has already begun performance under the contract.  Def. Resp. at 14.  Enjoining ACLC's performance under the contract at this time would interfere with the government's ability to obtain the important medical training services called for by the contract and would also impose costs and burdens on ACLC.

It is also without dispute that Amidon filed this protest 20 days after the GAO denied its protest, and just days before ACLC was scheduled to begin performance.  Def. Resp. at 7; Pl. Reply at10-11.  While the timing of Amidon's motion for a preliminary injunction is not necessarily fatal to its request for emergency injunctive relief, the timing of this request does impose a significant hardship on the government given the proximity to the commencement of ACLC's performance.

In addition, it is without dispute that the government has a national security interest in ensuring the timely and uninterrupted performance of this contract to provide medical training services at the Joint Special Operations Medical Training Center.  Def. Resp. at 6; Pl. Mem. at 8.  Given this, the public interest is best served by denying Amidon's request to stay performance of the contract while this litigation proceeds. *Akal Sec., Inc.*, 87 Fed. Cl. at 320-21 (the Court must

consider whether granting a motion for a preliminary injunction will further, or injure, the public interest).[3]  And so, denial of Amidon's motion for a preliminary injunction is warranted.

## V.      CONCLUSION

In sum, Amidon has not met its heavy burden to show that it is entitled to a preliminary injunction in this matter.  For this reason, the Court will not interfere with this procurement.  The Court, accordingly, denies Amidon's motion for a preliminary injunction.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on November 23, 2015.  This Memorandum Opinion and Order shall therefore be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

The Court hereby **ORDERS** that the parties **FILE** a joint status report, on or before **Monday, December 21, 2015**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Order, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED**.


 s/ Lydia Kay Griggsby_____
LYDIA KAY GRIGGSBY
Judge

---

[3] Because Amidon has not established that it is entitled to a preliminary injunction, the Court does not reach the question of the amount of bond.